CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
NOV 25 2009
JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| MITCHELL TYLER, <br> Plaintiff, | Civil Action No. 7:09-cv-00174 |
| v. | **MEMORANDUM OPINION** |
| BRYAN WATSON, et al., <br> Defendants. | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Mitchell Tyler, a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants Warden Bryan Watson of the Wallens Ridge State Prison ("WARSP") and WARSP correctional officers Lieutenant Still, Lieutenant Schlobohm, and Sergeant Ely. Plaintiff alleges that the defendants inflicted cruel and unusual punishment by conducting a strip search outside in the cold. The defendants filed a motion for summary judgment, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant the defendants' motion for summary judgment.

I.

A.

Plaintiff alleges that the defendants approached his cell on February 11, 2008, and ordered the plaintiff and his cell mate out of the cell so that the defendants could search it. (Compl. ¶ 10.) Defendant Still ordered defendants Ely and Schlobohm to strip search the plaintiff. Defendants Ely and Schlobohm brought plaintiff outside to the C-Building Segregation Recreation Yard and told plaintiff to take off all of his clothes except his socks. Plaintiff complied with the orders to squat and cough "in the freezing thirty-degree temperature." (Id.) Defendants Ely and Schlobohm then ordered plaintiff to get dressed and brought him back to his

cell. (Id. ¶ 12.) Plaintiff alleges in his complaint that he received "frostbites and numbness all over his person." (Id. ¶ 11.)

B.

The defendants submitted defendants' affidavits; the affidavit of Nurse Stanford, the Nursing Director at the WARSP; and plaintiff's medical record maintained in the regular and ordinary course of business. (Defs.' Br. Supp. Mot. (docket #15) Ex. V ¶¶ 1-2, Encl. A.) Nurse Stanford reviewed plaintiff's medical record and avers that plaintiff did not request to be seen by medical staff nor complained to medical staff about any frostbite or numbness resulting from the strip search. She also avers that plaintiff receives regular chronic care assessments for his asthma and has medical staff met with plaintiff since the search for headaches, sinus problems, and excessive sweating. (Id. ¶ 4.)

Lieutenant Ely avers that he led the plaintiff outside for the strip-search because he believed that the outdoor recreation yard and the showers were previously used as areas to strip-search inmates. (Id. 10 ¶ 4.) Ely does not remember why he chose the outdoor yard over the shower area, Ely and plaintiff were outside for approximately five minutes, and Ely's motivation for the strip search was solely because of the order by his superiors. (Id. 11 ¶ 5.) Lieutenant Schlobohm avers that assisted the search of plaintiff's cell by accompanying Ely and plaintiff outside and was not aware of the reasons Ely took the prisoner outside for the strip search. (Id. 12 ¶ 4.) Ely conducted the search, which was brief, before escorting plaintiff back to his cell. (Id. 12-13 ¶ 4.)

Warden Watson avers that inmate strip searches are normally conducted in a shower area, he did not know why staff strip-searched plaintiff outside in the cold, and he was not involved

2

with the decision to strip search plaintiff outside. (Id. 8 ¶¶ 3-4.) Upon finding out about the search, Warden Watson reminded the involved officers that strip searches should be conducted inside except in emergency situations. (Id. 8-9 ¶ 4.)

Lieutenant Still avers that he ordered defendant Ely to strip search the plaintiff while Still remained in the pod searching plaintiff's cell. (Id. 14 ¶ 4.) When plaintiff returned from the strip-search, plaintiff did not complain to Still about being outside in the cold. (Id. 14-15 ¶ 4.) Still was not involved with decision to stip-search plaintiff outside. (Id.)

Plaintiff filed his response to the defendants' motion for summary judgment. (Resp. (docket #) 19.) Notably, plaintiff states:

> Contrary to Nurse Stanford's affidavit, plaintiff only stated in his complaint that he suffered numbness freezyness [sic] during the strip search done outside in the cold. He never said that he suffered numbness or freezyness [sic] after the search. Nor does his statement had to necessitate [sic] medical attention because numbness and freezyness are natural reactions or effects the body experience[s] when one's body is exposed to very cold weather. In the present action, plaintiff's numbness and freezeness [sic] w[ere] only temporary and not permanent. Therefore, the plaintiff didn't make a complaint to medical about his numbness because it wasn't a medical-related issue.

(Id. 6.)

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving

party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must establish that the deprivation of a basic human need was objectively "sufficiently serious"

4

and the prison official subjectively acted with deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991). See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (describing deliberate indifference in the context of medical care). To be deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. See Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm). The objective component of an Eighth Amendment claim is contextual and responsive to "contemporary standards of decency." Estelle, 429 U.S. at 103. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks and citations omitted).

Plaintiff cannot succeed on his Eighth Amendment claim against any defendant because he did not suffer any objectively serious injury. Although plaintiff alleged in his complaint that he suffered frostbite from standing outside in the cold, plaintiff conceded in his response that he did not suffer any frostbite and was just cold from standing outside in the chilly air. Plaintiff's concession is corroborated by his medical record which is devoid of any claim that he suffered frostbite or complained to medical staff about being in the cold, despite his frequent treatment for his chronic conditions. I do not find any inference of a serious injury resulting from plaintiff

standing mostly undressed in the cold for several minutes. See Strickler v. Waters, 989 F.2d 1375, 1381-82 (4th Cir. 1993).

Moreover, plaintiff fails to state a claim against defendants Watson and Still because these defendants were not involved in the decision to strip search plaintiff. Plaintiff's action against the Warden for failing to take disciplinary action invokes vicarious liability, which is insufficient to state a claim. See Robertson v. Sichel, 127 U.S. 507, 515-516 ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (May 18, 2009). Moreover, plaintiff fails to establish Watson's or Sill's deliberate indifference to any constitutional violation. Accordingly, I grant the defendants' motion for summary judgment because they are entitled to judgment as a matter of law.

III.

For the foregoing reasons, I grant the defendants' motion for summary judgment.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

**ENTER**: This 25th day of November, 2009.

_____
Senior United States District Judge